Ms. Rusk, whenever you're ready. May it please the Court, good morning. I'm Sherry Rusk on behalf of Appellant Antonio Smith. May I reserve two minutes for rebuttal, please? You will. Watch the clock and I'll try to help. Thank you. There are essentially three things that make this case unique and different than your ordinary felon in possession case. The first thing is there are two young men driving in a Mercedes in Stockton on a Sunday afternoon. An officer, Officer Morales, sees the driver go through a stop sign, come to a rolling stop, and signals for the two to pull over. The driver of the car, Donato Moore, is on parole from a violent felony. He doesn't pull over. He takes off at a high rate of speed and the car ultimately crashes. Your client was a young man, two people in the car, Donato Moore, the driver, Antonio Smith, the passenger. And I take it you don't, in this case, challenge the officer's – there's no formal motion to suppress or anything that deals with the stop. That's true, Your Honor. And the reason for that was Donato Moore was driving the car. He had borrowed the car. According to the officer, it was Donato Moore that had borrowed the car. I'm not questioning your reasoning. I'm just – there is no – this is not a case in which you're saying they were stopped illegally and, therefore, there are fruits of an illegal stop. The reason why it didn't proceed that way is because Mr. Smith didn't have standing to challenge the stop. He wasn't the driver. The bag didn't originate with him. He was a passenger. And so there's a high-speed chase, according to the officer's And I know you've got limited time, but I'm not sure there's any dispute about the essential initial set of facts. In other words, Mr. – your client leaves the car. Correct. He's got a bag in his hand. Correct. He holds it for some short period of time and continues to run. He's eventually apprehended, and in the bag is a firearm. That's all correct. And your client is a felon. That is correct, yes. So, okay. So those are the – Those essential facts, yes, they're undisputed. Those are the facts that we know. So the things that do make this somewhat unique are, after the crash takes place and the facts that the Court just stated are all accurate, the case is prosecuted in San Joaquin County. This all happens on March 6, 2016. A few weeks later, on April 13th, the same officer, Officer Morales, is involved in the shooting death of an unarmed black suspect. Two days later, on April 15th, two days after the shooting, the case becomes federal. It's an ordinary felon in possession case in San Joaquin County. It then becomes federal. The defense counsel for Donato Moore, the driver, through his own investigation finds out about the shooting, and immediately counsel for both defendants say this case should go back to San Joaquin County. They're entitled to discovery on the officer's shooting. Send it back. And so while the government is apparently considering sending it back, Donato Moore's counsel has a conversation with the government fortuitously, and the government promises a dismissal to Donato Moore's counsel. It happens to be the Friday before Labor Day. As soon as Smith's counsel learns of this, Smith's counsel says, my client is the passenger. This guy was the driver. This guy took off. He had the bag. Send both of them back to San Joaquin County. Sotomayor, which has any ability to review any of that? Excuse me? We don't have any ability to review any of that. Well, this is not a case. You're not arguing. You might well – I understand your argument to be that you should have been allowed to try to impeach Officer Morales with his stuff.  But, I mean, the Feds in the States are not allowed to do that. They make deals and give little plea bargains all the time, and I wish we – sometimes I wish we had the ability to review them, but we don't. The only reason I point that out is it left the passenger, Mr. Smith, literally holding the bag, both holding the bag and left to go to trial. The government declined to dismiss against Moore, and the Court enforced a promissory estoppel theory. The only reason Smith was still there was fortuitously the dismissal hadn't been promised expressly to Smith. So because of a verbal conversation, which is all in the record, promising a dismissal to Moore, Moore wound up out of the case. He's the guy that was driving the car, he's the guy that took off, and he's the guy who had the bag. Yeah, but the – again, I wish you'd get back to this. Okay. Because this is not – your client wasn't charged with running away from the cops. No. He was charged with being a felon in possession of a firearm. Yes. So let's focus. So the third thing that makes the case unique is that Smith then goes to trial, and the police report, the contemporaneous report of Officer Morales was that the driver passed the bag to the passenger, car crashed, passenger dropped the bag and fled. That was it. And there's no other corroboration. Although he was wearing a body camera, he didn't activate it, Officer Morales. Several of the things that he testified to were undermined by his own police report, as well as the dispatch call. And so ultimately, the jury hung in the first case against Smith. The issue was whether Smith had knowledge of what was in the bag when he dropped it. There were no fingerprints, no DNA. So really, Officer Morales' testimony was – his credibility was pivotal. And the jury didn't credit his testimony. The second trial comes on December 5th. The first jury hung on October 25th. So it's barely over a month later. And now Officer Morales is more determined. And he basically obstructs counsel at every turn. His police report is inconsistent with the testimony he gave in the first trial. It's inconsistent with the testimony he gave in the second trial.  In fact, he – he – So he's a terrible witness. He refused – and it looks like it's a terrible cross-examination, too, as I look at it. So sometimes – But doesn't the district court judge say it's really all your fault? There were three different – three different reports. And maybe you should have made sense out of them when you were going to ask these questions. It was definitely an inartful and frustrating cross-examination without a doubt. Is he willfully misrepresenting anything? Well, I think that it's clear that he is for several reasons. Officer Morales, first of all, he denies – he doesn't acknowledge his own report, although he does at previous places. But then he blurts out – Because if you're showing them reports with redactions and they're saying, is this your report, and he says, I don't know, doesn't look like my report, didn't – and as opposed to the lawyer saying, come on now. Right. I know the redactions weren't there. Isn't this the report you wrote? The lawyer never quite gets around to that. And the police officer jousts with him as they – as they're trained to do. That's absolutely right. That's very true. Well, yes, Your Honor, because the – if you look at the reply brief, in fact, as a supplemental excerpt of record, the entire police report is submitted. And the fact is that there was one report, it was marked as Government's Exhibit 20, the same report was marked as Defense Exhibit F, same report. It's based on pages 13 to 18. It's a total of five pages. The government produced it to the defense in a redacted version. The redactions were always the same. There's no whiting out, no blacking out. This report was shown to Morales in the first trial, shown to him in the second trial. There were no additional redactions. There was never a different report. Well, but what's your point here? He saw pages – That Morales was lying or that he was a terrible witness or that the lawyer wasn't? My point is that twofold. One, Morales was lying. And two, he blurted out that there was a gang enhancement on the report. And that's, in essence, why we're here. That's the issue. Of all the things – Tell me what happened when he blurted that out. Defense counsel, co-counsel for the defense immediately objected. And what did the district judge do? The district court called a sidebar. And? And at the sidebar, I think there was shock all around from the government. Why is the witness doing this? I'm asking what the district judge did. I'm not asking for people's personal – what did the district judge do? The district judge didn't make a ruling. They just did not sustain the objection and didn't offer a limiting objection – limiting instruction. I'm sorry. Was one requested? It was – the objection was not ruled on. And I don't believe a limiting instruction was requested at that point. I take it you did not try this case? I actually did. You did? Yes. Okay. That's fine. By the way, each of us has done a bad cross-examination. Thank you. The best cross-examination is one you think of two months after the trial. That is very much true. That's precisely what happened. But in this instance, the gang reference was heard by the jury. It had nothing to do with the case. And now we've got a case that's pretty thin on evidence. There's no fingerprints, no DNA, no looking in the bag. But now we have this gang reference blurted out. The objection's not sustained. There's no limiting instruction. What's the obligation of defense counsel in general under those circumstances? Must you demand a ruling from the judge to make a record? Should you ask – should one ask for some – in other words, it's sort of a strange thing. You've got an objection that probably should have been sustained. It wasn't overruled. Something happened at sidebar that's not recorded, apparently. It's never returned to. Nobody mentions it in closing. So I'm trying to figure out, is that sufficiently preserved for us to rule on? I believe it is. Counsel objected at the time. Clearly, the gang reference is prejudicial under this Court's established precedent, blurting out that someone's got a gang enhancement. It's prejudicial, and I think it goes directly to your question about whether Officer Morales is lying or somehow trying to taint the proceedings. He doesn't say this report's different. He says there's a gang enhancement that's very specific, deliberate, and prejudicial. And I think that it's bolstered by the fact that on direct examination from the prosecutor, there's a series of questions asked about what does it mean to have no record on file when you run the plates? And there, Morales, to the government's question, blurts out, well, the car's likely in the area to burglarize. There's no evidence of that. What was Mr. — and I don't know the answer to this. What was Mr. Smith's prior felony for? I believe it was an assault. The jury was told? No. Just told that he was — had previously been convicted of a felony? Yes. It was stipulated. Without regard to what it was? Yes. Okay. I believe so. Can I ask you a question on the expert on flight? Yes. The defense made kind of a big deal. Well, first of all, was it error for the expert not to be permitted to testify? Yes. And the government made kind of a big deal about the flight, didn't they? Absolutely. And I think that's one of the most crucial issues in this case. In the first trial, which is just a matter of a month before the second trial, the defense gives notice of an expert witness. A different one. A different expert witness, correct, on the issue of flight, a social science context for why a young black man might flee from police for reasons other than guilt. The government moves in Limeny to exclude the flight expert, and the court denies the government's motion and indicates that it will allow a Daubert hearing to allow that expert to be tested by the government. Unfortunately, that expert is not there in the first trial. And the denial of a motion in Limeny can be for many reasons, which is I want to hear the guy first. Right. And then I'll decide whether or not to let him testify. So now you get to the second. We know the procedure history. Right. 11 o'clock on the evening before the trial is to begin, a motion in Limeny, a strange motion in Limeny, which basically says I don't want you to limit testimony. I want you to allow my expert to testify. He's filed. The judge says two things, page 33 of the transcript. He says the motion in Limeny won't be allowed because it's late. And there was a court-imposed deadline for filing motions in Limeny, as I understand it. But you had already disclosed to the government. So what happens, yes. So in Rule 16, did the judge also then say, he then says the expert would not be allowed. It does that seems to me to be a discretionary ruling rather than one relying on lateness. Am I wrong in that? I think that had the court exercised its gatekeeping function, whether through a Daubert hearing or an analysis of the facts and the expert credentials under 702, I think you would review it for an abuse of discretion. But here I believe it's a de novo review, because what happened was under Rule 16, the defense was required to give notice of the expert. The second trial was confirmed, trial confirmation hearing on November 22nd. On November 23rd, a day after the trial confirmation hearing, the defense gave notice to the government of their intent to call an expert. They gave a CV and a summary of the expert's testimony. The defense was completely in compliance with Rule 16 and discovery rules. The motions in Limeny deadline was set for November 28th. On time, on deadline, the defense filed a motion in Limeny to allow this expert to testify. It wasn't necessary to file that motion. In fact, at the first trial, it was the government moving to exclude the expert testimony. At the second trial, the government didn't move to exclude, but the defense filed a motion in Limeny to allow the expert to testify. That was unnecessary. But the defense captioned it, motion in Limeny to allow expert testimony, and mistakenly filed the same 404B motion. So in other words, it was correctly captioned, notice was provided, but the wrong document was filed on the docket. Realizing the error the night before trial, which was December 4th, counsel sent an email and a letter to the government saying, we gave you notice, timely notice, we misfiled the motion to include, we're refiling it. The morning of trial, the judge said, this is so late as to be ridiculous, I'm not going to consider it. The judge did not consider the merits. The judge. Scalia. Once you sum up, you notice the flashing light. The court didn't in any way evaluate the admissibility of the evidence. The court didn't even look at the 702 requirements or Dauber, whether or not the expert was admissible and relevant. The court just erroneously denied it as late, although it wasn't late. Notice was timely and proper.  Thank you, Your Honor. Mr. Morris. Good morning, Your Honors. May it please the Court. Matthew Morris, I represent the United States. Can you start with where your colleague ended? With the expert issue? Yeah, and here's – it's a procedural mess. I'm trying to figure out whose obligations were met and whose weren't. In the ordinary course, the only obligation under Rule 16 is to provide you with notice, a summary of the report, et cetera. That was done, correct? The record shows on the morning of trial, yes, at least as to the CV. So the statement from the prosecutor is we received the CV shortly before the case. And we knew you intended to call, and we received no objection under Rule 16. Nobody says to the trial judge, wait a minute, they haven't complied with Rule 16. That's right, Your Honor. We at least admitted that we had received a CV, and that combined at least with the motion the night before gives us some idea of what it's going to be. And it's in the context where we knew it was coming from the judge. And you didn't cause the problem. I'm just trying to figure out. So there's no Rule 16 issue. The motion in limine may be late, but she doesn't have to file a motion in limine to put on an expert, does she? That's right, Your Honor. And the judge says, this is all too late. You're not going to be able to put on the expert. No, Your Honor. Why isn't that just wrong? Because that's not what the judge said, Your Honor. And this is at the excerpt from the record, page 27. He says, the motion in limine will be denied because it's untimely, comma, although we'll talk about whether the evidence is admissible. So he clearly is making two, dividing this into the two things that you, yourself, divided into earlier. There's a question of- Well, but I'm looking at page 27. That's why I was asking your colleague about this. The court says, all right, we're on trial. We'll take up motions in limine. The court received in a timely manner three motions in limine from the government, three from the defendant. Defendant's motions in limine four and five were not timely filed. And for that reason, they'll be denied. And what I can't tell is, are four and five one of these? Yes, I think that the excerpt one was four or five. I don't recall which, frankly. OK, and then he says, although I'll talk about later whether I'll allow that evidence or not. That's right. And then you view his statement on page 32 or 33, the expert would not be allowed to testify. There's no chance this expert would be allowed to testify. Is a ruling on the merits? I think in light of the statement on 27, then 32 has to be taken in the context of what you're saying. Here's my problem with that. In 32, the judge says, OK, the two other motions in limine were untimely. I'm not going to take those up. And I'm not going to take up the proposed expert. So if he's not going to take up the proposed expert, how did he rule on the proposed expert? Well, I think either what he's doing here is saying, in the context of a motion in limine, I'm not going to do it because it's supposed to be briefed. In which case, he's already invited on page 27, Ms. Rusk, to come back then in the course of trial and say, OK, now I'm ready to tell you. Our expert's ready. They're present. And I want to call the witness. Well, but he says that there's no way you would be allowed, this expert would be allowed to testify. So she can't really bring him into trial and say, judge, he's here ready to testify. The judge would say, I told you I wasn't going to allow him to testify. And so if that's what 32 to 33 means, then it has to be consistent with his prior statement on 27 that he's now making a ruling on the merits. Well, let me ask you, again, this is hypothetical, a quite different question. The same set of facts occurred as occurred here. And the judge in the ruling says, your motion in limine is too late, no expert. Would that be error? So in other words, he says, because you? Yes. Because you filed your motion in limine too late. And there's no other context? One of the problems with hypotheticals is those are all the facts in the world. So you don't get to ask for other context. The judge just says, you filed your motion in limine too late, no expert. Presumably it would be. And that would be consistent with the Finley case, where it was sent back purely on, one of the reasons was purely on timeliness. But that's not what happened here. Because there is this back and forth, the first trial, there's this extensive colloquy in the excerpts of the record where the judge is talking with Ms. Rusk at the first trial about, you're really in a tough position here. If you want speculation about mental state, you've got a 704 problem. If you want simply to tell the jury you could make inferences and speculate about an inference to be drawn from it, now you've got a 702 problem. So in our case, it is not simply a, it's untimely under my motion in limine schedule, therefore expert doesn't come in. That's not what happened here. There's this extensive back and forth leading up to this moment. Did you try both cases? I didn't try either case, Your Honor. I'm a member of the appellate unit. The lead prosecutor drafted the brief, and I understand he's watching today. I'll just tell you my reaction to the whole case as a former prosecutor. This smacks of having lost the case on jury the first time that the officer gets ginned up and over-prepared and over-enthusiastic, and you have all this stuff coming in the record that has no business of being there. Gang enhancement, that Smith was involved in a fight, perhaps. It smacks of, we didn't win the first time, so we're going to gin the case up the second time. Convince me that's not the case. Well, let me address them sort of in orders of what you've talked about. The government is not defending the insertion of this mention of a gang. That was inappropriate. If this witness were to ask us, how should I address these questions? We would not have counseled him to make this kind of a statement. The government didn't elicit that, and as Judge Hurwitz already observed, neither the government nor the defense ever went back and touched that with a ten-foot pole. I understand where the defense didn't. Yes. And nor did we, though. And that's the point. Neither did we. And that distinguishes this case from every one of the cases about gangs that are cited. Ed Sidebar was an assistant U.S. attorney, correct? Was President Sidebar, yes. Yes. Did the assistant say to the judge, Judge, I think you should tell the jury to disregard that? We're surprised that the officer said that. It has nothing to do with the substance of the case. Please tell the jury to disregard it. No, Your Honor. Neither party asked for it to be disregarded or stricken. And this will become anecdotal at this point, but I can tell you from my personal experience, when we get to that point where a bomb's been dropped in trial, and I suspect you've probably experienced it as well, there's a real question as to whether or not do you want to draw attention to it or not. We certainly, I think, the position would take . . . The difference in drawing attention to something and behaving as an officer of the Department of Justice, whose job it is to make sure that cases are tried fair, square, turning square corners. And so there's a difference in saying, let's just not let this float out in the air and being responsible enough to say to a district judge, we think the government, whose job it is to pursue justice, thinks that the jury should be told to disregard that. If you've done what I just suggested, and I admit this is second-guessing, they could have said at sidebar, Your Honor, let's leave it alone.   jury should be told to disregard that. Throw the bomb outside the courtroom, and let's move on and try the case. That would leave it up to them. You're right, Your Honor, and so I think the best practice would have been for us at sidebar to have said, we'll defer to what the defense wants. If the defense wants an instruction, we won't object to it. If the defense doesn't want an instruction, we're not going to ask for one. What about the business of Smith getting in a fight in an altercation? Your Honor, that had been . . . That was what both parties expected the evidence to be at the first trial. We admit in multiple places in our brief, it was incorrect for the prosecutor to say that, because that wasn't what the evidence . . . This was in closing, right? It was in closing, Your Honor. That's right. To put it in context, it's a 24-page closing. It's 15 words, and it was immediately objected to. The court sustained the objection and instructed the jury to disregard. We acknowledge in the brief, again, the brief written by the prosecutor who made that misstatement, that it was wrong. We used the expression wrong, error, incorrect at least eight times. To be clear, standing here as a representative of the Department of Justice, any time that we have to say that one time, that's one time too many. We're here defending the conviction as having lived up to what the law demands, not defending this trial as being how we would script this trial out if we could. Go back to the gang mention. If the judge had said overruled, objection was made, the judge had said overruled, and then the trial proceeded exactly the way it did otherwise, would we have reversible error? No, Your Honor, because we go back to the question of the standard is, does what comes in undermine, or actually more likely than not, that the result would have been different? And so, it may have been an error, but the question of reversible error would be, does it undermine the confidence in the outcome, or is it more likely than not that jury would have made a difference? And that's why I return to Judge Hawkins' questions, because I have a case where somebody, it was a hung jury the first time. We don't know why, and we don't give much credence to explanations of why. But he's got a, his defense is, I didn't know what was in the bag. I was in a car with another guy, it was his car, I didn't know what was in the bag. And now we have all these little nibbles away at his, he was a gang member, he was in a fight, the gun's a really bad gun, let me, it doesn't matter. But if I could clarify. The judge keeps saying, sustain, sustain, sustain. We didn't get that information in. I know, but my question is, doesn't all this stuff in the aggregate undermine my confidence in the outcome in a, in a case that, I think from looking at the record, I can tell wasn't a slam bang case? Fair that it wasn't a slam dunk case, your honor. To, to be clear, what we wanted to elicit about that gun didn't come in, because the court sustained a series of objections, eventually saying to one of the prosecutors, I'm going to keep sustaining this until you get to the topic that you're allowed to get to, at which point we did. So that doesn't come in. The other, the, the officer's reaction to the no plate on file that's raised. And that, that was an, again, an objection that was sustained. I would point the court to that was the exact same answer he gave in the first trial. So this is now a case where something that is alleged now to be prejudicial, it was sustained and kept out in this trial, it came in in the first trial. So there's an example of something that was worse in the first trial as far as this litany with the court's file. And then we get down to the, I think as, as, as many members of the court have said today, we always walk away from these saying, boy, I wish I had done that differently. And this prosecutor walked away from his argument saying that there are 15 words there that I'm going to now have to try to find a way to, to explain in the context of this larger trial. The government's position is it does not undermine confidence in the outcome. Because really what it comes down to is two things. It was the, the prosecutor's misstatement, which was immediately corrected, and the jury was told to disregard what the prosecutor just said. And it was this blurting out of the gang enhancement, which every party stayed away from. And of course, I understand why the defense is going to stay away from that. But the, the government did too. We never went back there on redirect. Never asked another law enforcement agent to talk about this. Never mentioned it in, in closing a rebuttal. Recognizing that this was not something that we wanted to associate ourselves with, because it wasn't something we wanted in this trial. Now, you never, the government didn't object to the expert witness, is that right? Object to the, the defense expert? Yes. We had. Second time. The second time. I think, that's a good question. We had always been objecting to whether or not this was an appropriate topic for an expert. When it came in, in the context of that first day of trial, once the judge said he was not letting it in, we didn't raise an objection to it. If, as I posed earlier, if, for example, Ms. Rusk had interpreted this as an invitation to bring him back later in the case, the, the government absolutely would have objected at that point. Okay, but you never objected. And you did make kind of a big deal about the flight in the course of the trial, didn't you? That was part of our case. Flight was definitely, we argued that the jury could find consciousness of guilt from the flight. But it wasn't the only evidence. You'll, if you read the, the transcript of the closing, you'll notice, for example, also that, that the government argued. There's been this violent car accident. And what's the one thing that this person grabs and takes out of the car? It's the bag with the gun in it. Not the cell phones, not the food, not the clothes. Leaves behind everything except the one thing that's illegal in the car. And we argued the jury could interpret that as being evidence that he knew it was in it and was getting the one thing that was going to get them in trouble out of the car. And likewise, we argued that the flight was, was also part of that. So it was part of the government's case, but not exclusively. We didn't rely only on that. I see I'm getting short on time here. There's been a lot of issues that we have not covered. I'd be happy to address any of these if the panel has further questions. We've read your briefs. And if not, then I would just ask the court to affirm the conviction. Thank you. I thank both sides. You, you used up all your time, Ms. Rusk. And with this case will be submitted.
judges: Hawkins, Hurwitz, Eaton